UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EQUITAS BIO/PHARMA SOLUTIONS, LLC,<br><br>     Plaintiff<br><br>  v.<br><br>PREDICTIVE TECHNOLOGY GROUP, INC.,<br><br>     Defendant. | No. 7:20-cv-03383<br><br>**COMPLAINT FOR:**<br><br>1. **Breach of Contract**<br>2. **Breach of the Covenant of Good Faith and Fair Dealing**<br>3. **Fraud**<br><br>**Jury Trial Demanded** |

Plaintiff EQUITAS BIO/PHARMA SOLUTIONS, LLC ("Equitas") alleges against Defendant PREDICTIVE TECHNOLOGY GROUP, INC. ("Predictive") (together, the "Parties" and each individually, a "Party"), as follows:

### Jurisdiction and Venue

1. This is a civil action and this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff Equitas does not share a state of citizenship with the Defendant Predictive, and the amount in controversy exceeds $75,000.

2. Venue is proper in this District because the Parties agreed to venue in this district in accordance with the terms and conditions of a forum selection clause in commercial agreements between them.

### The Parties

3. Equitas is a limited liability company incorporated in the state of Delaware with a principle place of business at 135 Piermont Avenue, South Nyack, New York. Equitas is a business that performs, for a fee, scientific research and analysis relating the development of a wide variety of pharmaceuticals.

4. Predictive is a corporation incorporated in the State of Nevada with a principle place of business believed to be 2735 Parleys Way, Suite 205, Salt Lake City, Utah. Predictive is

engaged in the business of developing, marketing and distributing products comprising blood, tissue, cellular products, and molecular diagnostics.

## Factual Allegations

**A.     Predictive approaches Equitas about a consulting arrangement.**

5.      Equitas and Predictive's relationship dates back to 2016, when the parties entered into a consulting agreement. B D Forrest & Company, Inc. provided assorted consulting services to Predictive related to Predictive's efforts to obtain licensing and partnership opportunities relating to various pharmaceutical products.

6.      In August 2018, Predictive approached Equitas about a consulting relationship to assist it in obtaining FDA approval of a new product. Equitas agreed. The parties began negotiating an agreement, and there were protracted negotiations during which Equitas was not paid for work it had performed.  These issues were finally resolved in May 2019 (with Equitas being paid in full), prior to Equitas being forced to litigate the ongoing dispute.

7.      Subsequently, Predictive approached Equitas again in September of 2019 asking for consulting work on additional projects.  The parties entered into further contract negotiations, which again were contentious, a situation not improved by the fact that Predictive had previously failed to pay Equitas for an extended period for work that had been performed in full.  Even though these prior amounts owed were eventually paid, Equitas needed to (and did) ensure in the new contract negotiations that it would be protected in the event of another default by Predictive.

8.      The proposed termination provisions of the agreement were particularly heavily negotiated. Equitas made clear that its work would be conducted on a fixed fee basis, although paid in installments, and that it would not work on a month-to-month basis. Accordingly, Equitas insisted that, should Predictive choose to terminate the agreement early, or should Equitas terminate the agreement for cause, Predictive would have to pay the entire contract amount.

9.      In light of Equitas's prior history of struggling to extract payments from Predictive, Equitas demanded assurance that Predictive would be able to make all the installment payments required of it under the new MSA. Predictive agreed that it would.

10. Ultimately Predictive accepted Equitas's termination terms, and an agreement was signed on September 17, 2019.

**B.   Equitas and Predictive enter into an MSA and PWOs.**

11. The agreement between the parties was memorialized by a Master Services Agreement ("MSA") effective as of September 17, 2019. The specific services to be provided by Equitas and the specific project costs were to be provided in project work orders (referred to in the MSA as "PWOs") that would be issued pursuant to the MSA and governed by the MSA's provisions. (MSA § 2(B).) The MSA contemplated that Equitas's services would be billed at a fixed rate per month, with the size of the payments variable over time. (MSA § 5(C).)

12. The initial term of the MSA was scheduled to end on December 31, 2020. (MSA § 1.) The MSA also provided that it could be terminated "immediately upon any breach of this Agreement or applicable PWO by the other party and the failure of the breaching party to cure such breach within thirty (30) days of receipt of written notice of such breach from the non-breaching party . . . ." (MSA § 9(A).) If Equitas terminated the MSA for "Good Reason," Predictive would be obligated to pay to Equitas "the outstanding balance due of [Equitas's] Fees being all scheduled payments installments through the completion of the Initial Term, and for the completion of any Renewal Term, as applicable, from said termination date." (MSA § 9(E)(ii).)

13. The MSA is governed by New York law. (MSA § 18.)

14. Two PWOs were issued on the same day the MSA was signed, September 17, 2019. In PWO #1, Equitas agreed to provide services including "guiding the development and implementation of strategic plans, technology development, and development operations associated with pharmaceutical product development," with a list of specific aspects of development following. (PWO #1 § 4.) Equitas's fees under PWO #1 were to be $456,000 in cash and warrants to acquire 750,000 shares of Preventive stock. (PWO #1 § 5.)

15. PWO #1 made clear that Equitas's cash compensation was a fixed fee, to be paid in monthly installments through September 30, 2020. (PWO #1 § 6(A)(a).) Equitas did not have

an obligation to send invoices—Predictive's payments were automatically due on the first day of every month according to the terms of the PWO. (*Id*.)

16. PWO #1 included a termination provision that stated that if Equitas terminated the PWO for Good Reason as defined in the MSA, then Predictive was to pay all outstanding payments through the completion of the PWO's term, which ended in September 2020.

17. PWO #2, also effective as of September 17, 2019, obligated Equitas to services including "guiding the development and implementation of regulatory strategic plans and regulatory CMC associated with pharmaceutical product development." (PWO #2 § 4.) PWO #2 also described a fixed fee arrangement, with cash compensation totaling $304,000 to be paid in monthly installments (PWO #2 § 6(A)(a)), as well as warrants to acquire 500,000 shares of Preventive stock (PWO#2 § 5). These installment payments were also to be paid monthly without requiring an invoice. (*Id*.) The termination provision of PWO #2 was identical to the one in PWO #1.

18. Two additional PWOs were issued, PWO #3 on November 18, 2019, and PWO #5 on February 21, 2020 (PWO #4 was never finalized). PWOs #3 and #5 provided for hourly work at $500 an hour conducted by two Equitas consultants, with payments owed according to the terms of the invoices issued pursuant to the PWOs.

19. Through the MSA and the PWOs, Equitas agreed to commit a specified number of hours each month (on a consultant-by-consultant basis) over the 13-month initial term solely to work on behalf of Predictive.

       **C.**    **Predictive immediately struggled to pay its bills.**

20. Equitas and its consultants continued providing the requested services under the MSA and the PWOs, but Predictive quickly fell behind on its monthly payments to Equitas. While they made their first two monthly payments (albeit late), Predictive failed to make multiple of its required subsequent payments. Although some payments were made, the majority of the amounts owed were never paid and remain due and owing.

21. Around that time, Equitas offered to permit Predictive to enter into a payment plan to make up its arrears. Predictive agreed to Equitas's proposal on or about February 13, 2020. Two weeks later, however, Predictive told Equitas that they would not be making their March 1 payment. When confronted by Equitas, the chairman of Predictive's board of directors acknowledged that the situation was "unacceptable," but no payments materialized.

22. As of the date of this filing, the following Predictive invoices are unpaid:

- PWO #1: the December 2019, January 2020, March 2020 invoices. The April payment was due March 31st, 2020 and was not paid on that date but will not technically be in breach until 30 days after that date.

- PWO #2: the December 2019, January 2020, March 2020 invoices. The April payment was due March 31st, 2020 and was not paid on that date but will not technically be in breach until 30 days after that date.

- PWO #3: the December 2019, February 2020 invoices. The March 2020 payment will become due April 30th, 2020, but it will not (technically) be counted as an actual breach until 30 days after that date.

- PWO #5: the February 2020 invoice.

23. Equitas repeatedly attempted to secure payment from Predictive, but Predictive, despite multiple assurances that Equitas would be paid, failed to make any payments. As of the date of this filing, Predictive has past-due invoices to Equitas in an amount in excess of $300,000.

24. Having failed to get paid, Equitas, through counsel, sent a notice of breach pursuant to section 9(A) the MSA to Predictive on March 12, 2020. Equitas did not receive any response, nor did it receive any payments. Accordingly, on April 16, 2020, Equitas terminated the MSA and the PWOs pursuant to section 9(A) of the MSA and provided notice to Predictive. That letter concluded as follows:

> Pursuant to paragraph 9.E of the Master Services Agreement, please remit to Equitas the outstanding balance of $351,080.17 as well as the remaining installments through the completion of the

       Initial Term of the Master Services Agreement, in the amount of $200,000 immediately.

25.    To date, these amounts remain unpaid.

## First Claim for Relief

### Breach of Contract

26.    Equitas incorporates paragraphs 1 – 25 above as if fully set forth herein.

27.    Equitas and Predictive entered into a valid, binding, and enforceable agreement, namely the MSA and PWOs #1, 2, 3, and 5, which were incorporated into the MSA and made a part thereof.

28.    Equitas performed every obligation required of it under the MSA and PWOs prior to the termination of the agreements.

29.    Predictive breached the MSA and PWOs by failing to render payment as required by the terms of the MSA and PWOs.

30.    Equitas validly terminated the MSA and PWOs on April 16, 2020, excusing it from further performance under the agreements.

31.    Equitas has been harmed in the amount of at least $551,080.17, consisting of all unpaid amounts owing under the MSA and PWOs interest up to the date of termination. Equitas will be entitled to further interest, calculated pursuant to section 5(E) the MSA.

## Second Claim for Relief

### Breach of Covenant of Good Faith and Fair Dealing

32.    Equitas incorporates paragraphs 1 – 31 above as if fully set forth herein.

33.    Equitas and Predictive were in a valid, binding, and consensual contractual relationship, through, namely, the MSA and the PWOs.

34.    Every contract contains an implied covenant of good faith and fair dealing through which each party agrees it will not do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

35.    Predictive violated the implied covenant of good faith and fair dealing by, at minimum: misrepresenting its willingness and ability to pay for Equitas's services under the

contract; repeatedly making false assurances that Equitas would be paid; and incenting Equitas to continue providing services with no intention of ever paying for them.

36. As a result of these breaches, Equitas was injured in an amount to be proven at trial.

### Third Claim for Relief

### Promissory Fraud

37. Equitas incorporates paragraphs 1 – 36 above as if fully set forth herein.

38. When Equitas entered into the MSA and PWOs with Predictive, Predictive made specific statements to Equitas that it was able to and intended to perform its obligations under the agreements, namely, to render payment for the services Equitas would provide.

39. At the time Predictive made these promises it had no intention of keeping them.

40. Equitas was harmed by Predictive's misrepresentations when it provided services to Predictive that Predictive had no intention of ever paying and dedicated resources to Predictive at the expense of other work Equitas could have provided to paying customers.

*[remainder of page intentionally left blank]*

**Prayer for Relief**

Wherefore, Equitas prays for the following relief:

1. That the Court enter judgment in Equitas's favor on all claims;

2. That the Court enter judgment awarding damages (including without limitation actual, compensatory, statutory, and punitive damages), restitution and disgorgement as described in each of the above claims, in favor of Equitas and against Predictive in amounts according to proof but believed to be at least $551,080.17, plus interest commencing on the date of the termination of the contracts; and

3. Such other relief as the Court deems just and reasonable.

Dated:  May 5, 2020                               Respectfully submitted,

                                                  GLUCK DANIEL LLP
                                                  *Attorneys for Plaintiff Equitas*
                                                  *Bio/Pharma Solutions, LLC*

                                            By:  */s/ Justin L. Sowa*
                                                  Gordon C. Atkinson, Esq.
                                                  Justin L. Sowa, Esq.
                                                  One Sansome Street, Suite 720
                                                  San Francisco, CA 94104
                                                  Telephone    415-510-2114
                                                  Facsimile    415-510-2208
                                                  Email   litigation@gluckdaniel.com